**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 02:01 PM January 25, 2013**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| BRUCE EDWARD KANDEL, | ) | CASE NO. 11-62597 |
| | ) | |
| Debtor. | ) | ADV. NO. 12-6003 |
| _____ | ) | |
| UNITED STATES TRUSTEE, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| BRUCE EDWARD KANDEL, | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |

This proceeding is a § 727 action brought by the United States Trustee ("UST"). Various requests are before the court. First, UST moved for summary judgment. Debtor's response to the motion includes what the court interprets to be a brief statement that counsel intends to withdraw. Debtor also filed a motion to extend the dispositive motion deadline in order to file his own motion for summary judgment, which is opposed by the UST.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated

1

April 4, 2012.   In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

This opinion is not intended for publication or citation.   The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtor worked almost his entire life in the trucking industry.   Employed at a very young age by Beller-Von Kaenel Trucking, Inc. ("Beller-Von Kaenel"), he eventually obtained an ownership interest in the company, as well as other related entities, including Ohio Brokerage, Inc., Strasburg Leasing Company ("Strasburg Leasing"), Ohio Carrier Corporation ("Ohio Carrier") and STAB LLC.   On Schedule B of the petition, Debtor listed his one hundred percent ownership interest in the businesses with a total value of $602,000.[1]

For many years, the businesses were profitable.   In some years, receipts totaled millions of dollars.   In spite of his success, Debtor repeatedly denies any business acumen.   He relied on others, including his accountant, Michael Franz, and his office staff to handle the "paper work" side of the business.   Things went awry.   Between December 26, 2006 and January 4, 2007, the Secretary of State for the State of Ohio cancelled the charters of Strasburg Leasing Company, Beller-Von Kaenel Trucking, Inc., Ohio Carrier Corporation, and Ohio Brokerage, Inc.[2]

Beginning in 2008, business started to decline, which Debtor attributes to the economy. The start of the businesses' decline coincides with an acrimonious divorce between Debtor and his ex-wife, Anne Kandel, the largest creditor in this case.   In 2009, Debtor started missing 941 tax and workers' compensation payments.[3]   The financial downturn culminated in Debtor's inability to make payroll in July 2011.   At this point, his credit card was maxed out and he had no ability to borrow additional funds to continue the businesses, so he ceased operations on or about August 1, 2011.

Debtor's fiancée, Christine Kinsey, began working for Debtor in early 2011.   She had previous business experience as a self-employed small business owner.   Through her employment with Debtors' companies, she believed there was potential for the businesses to make money, so she established a company, KTS Leasing, LLC ("KTS"), which entered into an equipment lease, dated August 1, 2011, to lease tractors and trailers from "Strasburg Leasing Company aka Strasburg Leasing Inc. & Beller Von Kaenel Trucking, Inc."   Under the lease agreement, KTS made the lease payments on the equipment directly to First National Bank of Dennison, the secured creditor.   Additionally, KTS collected and disbursed the accounts receivables of Debtors'

---

[1] Debtor did not provide any information on the businesses on the Statement of Financial Affairs, leaving question nineteen completely blank.

[2]  Debtor claims that he did not know of the cancellations.   Upon seeking information from his accountant, he says that the cancellations were in error.   However, the charters remain cancelled to this day based on public information available online from the Ohio Secretary of State.

[3] At the time he filed, he owed approximately $450,000 to these taxing authorities.

2

businesses.   Debtor now works as a fleet manager for KTS earning $28,000 per year.

Copies of the lease are attached to both UST's motion for summary judgment and Debtor's affidavit.   Neither is signed or dated.   The lease states the parties made the agreement on August 1, 2011.   Although Debtor's response to the motion for summary judgment indicates the parties signed the lease later, in December 2011, this is not supported in the record.   Regardless, the execution date is immaterial.   Debtor admits that he stopped operating on or about August 1, 2011, following his inability to meet payroll.   Christine Kinsey testified that she started KTS in August 2011.   It is undisputed that KTS is using equipment that was purchased and previously operated by Debtor in his trucking activities.   KTS provided no consideration for any transfer.   According to Debtor, if he had not leased the equipment to KTS, the bank would have repossessed the equipment and sold it at a loss.

The UST contends that Debtor inappropriately transferred various interests and assets both prior to and after filing chapter 7 bankruptcy in August 2011, including the equipment leased to KTS.

## DISCUSSION

### I.    Motion to Extend Time to File a Motion for Summary Judgment

On November 17, 2012, Debtor filed a motion to extend the court's deadline to file dispositive motions.   UST opposes the motion   Under an August 15, 2012 order, dispositive motions were due by November 16, 2012.   The court denies the request on two independent grounds.

First, the motion is not well-taken.   UST filed the motion for summary judgment on May 2, 2012.   Debtor's response was initially due on May 29, 2012.   On May 30, 2012, Debtor untimely sought an extension, followed by requests to file Debtor's affidavit and reopen discovery. Over UST's objection, discovery was re-opened.   As part of the relief, the court set a new dispositive motion deadline of November 16, 2012.   Debtor's second motion to extend was again filed after the deadline expired and came after the court had provided an additional three months for discovery and motions.   UST's motion for summary judgment has been pending over six months.   To allow Debtor an additional extension would reward a pattern of delay.

Second, the court finds that Debtor abandoned his request for the extension.   In his response to UST's summary judgment motion, filed on November 29, 2012, nearly two weeks after he filed the motion to extend time, Debtor states "[t]his Memorandum is therefore being filed in opposition to the U.S. Trustee's Motion for Summary Judgment.   It might have been filed as a brief in support of the Debtor's own summary judgment motion but the deadline for dispositive motions has expired."   To the court, with this statement, Debtor throws in the towel. Consequently, the motion to extend the deadline to permit Debtor to file a motion for summary judgment is denied.

3

## II.       Withdrawal by Wallace W. Walker, Jr.

Debtor's response to the summary judgment motion begins with the sentences "Counsel must withdraw from this case.   Personal and family circumstances do not permit him to continue." The court does not find this to be a proper request for withdrawal and will not consider it here. The court notes that Mr. Walker did file a motion to withdraw on January 7, 2013.   The court will treat this motion in due course.

## III.      UST's Motion for Summary Judgment

To grant the UST's motion for summary judgment, the movant must demonstrate to the court that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Bankr. P. 7056(a).

UST argues that Debtor should not receive a discharge because he transferred property in the year before his bankruptcy filing with the intent to hinder, delay or defraud his creditors.   11 U.S.C. § 727(a)(2).[4]   The Sixth Circuit Court of Appeals breaks the required proof into two elements:   "1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property.'" Keeney v. Smith (In re Keeney), 227 F.3d 679, 683 (6th Cir. 2000) (citing Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)).   Tacitly, there is also a requirement that the property be property of the debtor.   Hulsing Hotels Tennessee, Inc. v. Steffner (In re Steffner), 479 B.R. 746 (Bankr. E.D. Tenn. 2012) (citations omitted).   To succeed on a § 727(a)(2)(A) claim, UST must prove these elements by a preponderance of the evidence.   Barclays/Am. Bus. Credit, Inc. (In re Adams), 31 F.3d 389, 394 (6th Cir. 1994).   Section 727 is to be construed liberally in favor of the debtor.   Keeney, 227 F.3d 679, 683.

Two dispositions underpin the UST's § 727(a)(2) claim: (1) the transfer of the equipment to KTS via the lease agreement and (2) the receipt and distribution of accounts receivable by KTS. The tractors, trailers and accounts receivable were ostensibly the property of one of the business entities.   Generally, corporate property is not property of the estate. See Fowler v. Shadel, 400 F.3d 1016 (7th Cir. 2005); Steffner, 479 B.R. 746, 761.   Rather, it is a debtor's interest in the entities, such as the stock shares, that are property of the estate.   See, e.g., In re Liber, 2012 WL 1835164 (Bankr. N.D. Ohio 2012); In re Hopkins, 2012 WL 423916 (Bankr. W.D. Mich. 2012).

The UST prosecutes its motion on the premise that the transferred property was property of the Debtor and became property of the estate under 11 U.S.C. § 541.   According to UST, Debtor's degree of dominion and control over the corporations and corporate assets created a property interest in Debtor that brought the assets into the estate.   UST reliance on Adams, and the other cited cases, is misplaced.   In Adams, the court relied on § 727(a)(7) to establish the § 727(a)(2)(A) claim.   In re Adams, 31 F.3d, 389, 394 fn. 2; see also Steffner, 479 B.R. 746.   UST did not present any arguments under § 727(a)(7) and therefore Adams is neither persuasive or analogous.

---

4 The complaint also contains a count under § 727(a)(2)(B) for a transfer of estate property after the case was filed but the motion for summary judgment focuses on the § 727(a)(2)(A) count.

4

The other cases cited by UST are equally unhelpful. Both <u>Montgomery</u> and <u>Smith</u> involved property that was obtained in check kiting schemes, not corporate property. <u>McLemore v. Third Nat'l Bank in Nashville (In re Montgomery)</u>, 983 F.2d 1389 (6th Cir. 1993); <u>In re Smith</u>, 966 F.2d 1527 (7th Cir. 1992). <u>Strasnick</u> is unpersuasive because the court clearly had other grounds, involving non-corporate property, as the basis for denial of the discharge. <u>Moecker v. Strasnick (In re Strasnick)</u>, 256 B.R. 330 (Bankr. M.D. Fla. 2000). Consequently, the cursory conclusion that corporate property was property of the debtor, with no legal explanation, is unavailing. The cases do not provide sufficient grounds to alter the general rule that corporate property is not property of the estate.

UST also suggests that cancellation of the charters of several of the businesses is meaningful on its § 727(a)(2) claim. Between December 26, 2006 and January 4, 2007, the Secretary of State for the State of Ohio cancelled the charters of Strasburg Leasing Company, Beller-Von Kaenel Trucking, Inc., Ohio Carrier Corporation, and Ohio Brokerage, Inc. UST argues that the companies "lost their legal authority to operate" following the cancellations. (M. Summ. Judgment, p. 3, ECF No. 17.) Implicit in the UST's position is a suggestion that loss of the corporate shield created a de facto alter ego. However, UST offers no convincing support for this proposition.

Under the Ohio Revised Code, a corporation "shall cease to carry on business and shall do only such acts as are required to wind up its affairs, or to obtain reinstatement of the articles . . . and for such purposes it shall continue as a corporation." O.R.C. § 1701.88(A). Courts are divided on the effect of charter cancellations. In 1926, the Ohio Supreme Court reviewed corporate franchise tax statutes and concluded that cancellation of a charter for a failure to pay franchise taxes does not void all post-cancellation activities. <u>Eversman v. Ray Shipman Co.</u>, 115 Ohio St. 269 (1926). Although one section of the general code provided that 'all the powers, privileges and franchises conferred upon such corporations, by such articles of incorporation * * * shall cease and determine' upon cancellation, other sections provided for reinstatement, as well as for quo warranto actions by the attorney general 'to forfeit and annul its privileges and franchises.' <u>Id.</u> at 272-73. Taking the statutory scheme as a whole, the court concluded not every post-cancellation transaction was void and upheld the mechanic's liens resulting from transactions occurring during the cancellation period.

The enactment of the Corporation Act, and the specificity of O.R.C. § 1701.88, convinced some courts that <u>Eversman</u> is no longer valid. *See, e.g.,* <u>Chatman v. Day</u>, 7 Ohio App.3d 281 (Ohio App. 2nd 1982); <u>Shaw v. Jenkins</u>, 159 F.Supp.2d 999 (S.D. Ohio 2001) *cf.* <u>Eleanore Builders, Inc. v. U.S.</u>, 826 F.Supp. 1111 (N.D. Ohio 1993). <u>Chatman</u> premised its position on the following:

> The firm proscription in the Corporation Act, accompanied by
> authority for only a limited purpose, indicates an intention of
> the legislature to withdraw the power of such corporation and
> not to tolerate the use of lapsed corporations by individuals as
> a shield for continuing business under the name of a dead,

5

defunct, and possible insolvent corporation.

Chatman, 7 Ohio App.3d 281, 282. These courts find that activities outside the scope of the statute subject a corporate officer or director to personal liability. Id. The court does not find this persuasive.

The cases address liability for actions taken during the cancellation period. "When articles of incorporation are cancelled, the authority of the corporation to do business ceases and, after such termination, officers who carry on new business do so as individuals, loses the protection of the Corporation Act, and are personally responsible for such obligations as they occur." Allied Pipe Prods., Inc., 1988 WL 3741, *3 (Ohio App. 8th 1988) (unreported) (citations omitted). The court fails to see how Debtor's personal liability for post-cancellations is relevant to the present inquiry. The material issue is whether the corporate form remains intact, thereby shielding corporate assets and maintaining their independence as corporate property. The fact that Debtor could be personally liable for the corporation's post-cancellation acts does not mean that he becomes entitled to assume the corporation's property.

Clearly, the corporate form can be disregarded under appropriate circumstances. *See* Brennan v. Slone (In re Fisher), 296 Fed.Appx. 494, 505 (6th Cir. 2008) (discussing the alter ego theory); Steffner, 479 B.R. 746, 761-62 (stating that an alter ego or reverse corporate veil finding "would permit conduct regarding non-debtor property to be the basis for denial of discharge under § 727(a)(2)"). In Ohio, proof of several factors is required to show an alter ego:

> (1) grossly inadequate capitalization, (2) failure to observe
> corporate formalities, (3) insolvency of the debtor corporation
> at the time the debt is incurred, (4) shareholders holding them-
> selves out as personally liable for certain corporate obligations,
> (5) diversion of funds or other property of the company property
> for personal use, (6) absence of corporate records, and (7) the fact
> that the corporation was a mere facade for the operations of the
> dominant shareholder(s).

Id. at 506 (citing Taylor Steel, Inc. v. Keeton, 417 F.3d 598, 605 (6th Cir. 2005) (other citations omitted). In this case, the UST did not seek to pierce the corporate veil or request a finding that the corporation was an alter ego of Debtor. Consequently, there is no basis for ignoring the corporate shield.

One of the purposes of the corporate form is to protect assets for the benefit of the creditors of the corporation. *See* Liber, 2012 WL 1835164 * 4. When a corporation is dissolved, or insolvent, the assets of the company form a trust for claims by corporate creditors. Kesselring Ford, Inc. v. Cann, 68 Ohio App.2d 131 (Ohio App. 1st 1980); R.E. Harrington, Inc. v. The Republic Corp., 1976 WL 190227 (Ohio App.10 Dist. 1976). Without this protection, creditors of the corporation cannot look to corporate assets for their remedy.

Assuming arguendo that the corporate property was Debtor's or that there is an alter ego, there is no proof that any transaction was inappropriate.   Debtor stated that the corporation was unable to continue and so he transferred the equipment to KTS with a commitment by KTS to pay the equipment debts.   This is a tactic commonly used by failing enterprises to salvage something, the avoidance of debts related to the equipment, from a certainly failing situation.   If other facts are developed, the finding could be different.   The same logic holds for other assets such as receivables.   It is not factually clear what was taken and what it was spent for.   Facts remain to be proved.   In such circumstances, summary judgment is inappropriate.

The court will deny the UST's motion for summary judgment by separate order.

#            #            #

**Service List:**

Scott R. Belhorn
United Sttaes Trustee
Suite 441
H.M. Metzenbaum U.S. Courthouse
201 Superior Ave., Esat
Cleveland, OH 44114

James R Kandel
101 Central Plaza S
Ste 1003
Canton, OH 44702-1433

Wallace W. Walker, Jr.
Wallace W. Walker, Jr., Esq.
7774 Oakhurst Cir
Brecksville, OH 44141